UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTHONY L. TROUPE,

            Plaintiff,

                                    Case No. 19-cv-1318 -pp

    v.

LAVONTAY FENDERSON, BENNETT F. THILL,
GARY F. NEUBAUER, ADAM R. AMUNDSEN,
NATALIE E. LONGRIE, CODY J. DUMMER,
ALLEN WASSIL, A. FELICIA FRIERI GAINES
and LENET WEBB,

            Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 96), DENYING PLAINTIFF'S DISPOSITIVE MOTION (DKT. NO. 105), DENYING PLAINTIFF'S RIGHT TO TRIAL HEARING REQUEST (DKT. NO. 109), DENYING PLAINTIFF'S MOTION FOR TRIAL CASE AS SCHEDULED (DKT. NO. 114), DENYING PLAINTIFF'S NOTICE OF DETAINMENT (DKT. NO. 117), DENYING PLAINTIFF'S MOTION FOR *HABEAS CORPUS*/TRUST ACCOUNT ENTRY STATEMENT (DKT. NO. 120), DENYING PLAINTIFF'S REQUEST TO AMEND SCHEDULING ORDER TO INCLUDE JURY SELECTION & TRIAL DATE (DKT. NO. 122), DENYING AS MOOT PLAINTIFF'S MOTION OF CONSOLIDATION (PER TO CIVIL LOCAL RULES #42) (DKT. NO. 124), DENYING PLAINTIFF'S REQUEST FOR FEDERAL INTERVENTION (DKT. NO. 127) AND DISMISSING CASE**

---

After the plaintiff amended his complaint (Dkt. No. 5), the court screened the amended complaint and allowed him to proceed on a Fourth Amendment claim against the defendants. Dkt. No. 43 at 10. The court ordered the parties to complete discovery by March 25, 2022 and to file dispositive motions by May 27, 2022. Dkt. No. 67. The defendants filed a motion for summary judgment on the deadline. Dkt. No. 96. Four days later, the plaintiff filed a single-paragraph

1

document titled "dispositive motion." Dkt. No. 105. The plaintiff since has filed multiple requests for a hearing, trial and federal intervention, dkt. nos. 109, 114, 117, 127, and motions for a *habeas corpus* trust account entry statement, dkt. no. 120, amendment of the scheduling order, dkt. no. 122, and consolidation of his cases, dkt. no. 12. Because the defendants are entitled to judgment as a matter of law, the court will grant their motion for summary judgment and deny the plaintiff's motions.

## I.    Defendants' Motion for Summary Judgment (Dkt. No. 96)

The defendants moved for summary judgment on three grounds: (1) Sergeant Webb had no personal involvement with the plaintiff's arrest; (2) the defendants did not violate the plaintiff's Fourth Amendment rights; and (3) the defendant officers are entitled to qualified immunity. Dkt. No. 97. Although this court's Civil Local Rule 56(b)(2) requires a party opposing a motion for summary judgment to file a memorandum of law, a concise response to the moving party's statement of facts and supporting evidence, and despite the fact that the defendants provided the plaintiff with a copy of this rule when they filed their summary judgment motion (Dkt. No. 96-2), the plaintiff filed a one-paragraph "objection" to summary judgment. Dkt. No. 106. The defendants did not file a reply brief.

### A.    Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc.,

2

477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. Put another way, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005).

B.    Facts

Because the plaintiff is not represented by a lawyer, the defendants' summary judgment motion put the plaintiff "on notice that any factual assertions contained in the Declarations accompanying this Motion will be accepted by the Court as true unless the Plaintiff shows his own Declaration(s) or other documentary evidence contradicting those factual assertions." Dkt. No. 96. See Civil Local Rule 56(a)(1)(A) (E.D. Wis.). The defendants attached to their motion a copy of Civil L.R. 56, which informed the plaintiff that his responses to the defendants' proposed findings of fact had to be filed within thirty days. The plaintiff did not respond to the defendants' proposed findings of fact. He

3

filed only a one-paragraph "objection" to summary judgment. That means that the court must deem the defendants' uncontroverted statements of material fact admitted. Civil L.R. 56(b)(4). See also Fabriko Acquisition Corp. v. Prokos, 536 F.3d 605, 607–08 (7th Cir. 2008) ("[A] district court is entitled to demand strict compliance with [the local] rules for responding to a motion for summary judgment, and . . . a court does not abuse its discretion when it opts to disregard facts presented in a manner inconsistent with the rules.") (citation omitted); Hill v. Thalacker, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigant).

The plaintiff filed a verified amended complaint declaring under penalty of perjury that the allegations in it were true and correct, so the court has treated the allegations in the amended complaint as evidence presented in opposition to the motion for summary judgment. See Jones v. Van Lanen, 27 F.4th 1280, 1285-86 (7th Cir. 2022) ("The law allows verified complaints— containing not just allegations but sworn statements of fact—to serve as evidence for purposes of summary judgment). But the court is not obligated to scour the record to develop the plaintiff's opposition. Jeffers v. Comm'r, 922 F.3d 649, 653 (7th Cir. 2021). Mindful of the fact that the plaintiff is representing himself and is not a lawyer, the court has decided the summary judgment motion by considering the defendants' uncontroverted, proposed facts (Dkt. No. 98), the verified amended complaint (Dkt. No. 5) and the attachments to the verified amended complaint (Dkt. Nos. 5-1, 5-2).

This case arises under the Fourth Amendment to the United States Constitution and 42 U.S.C. §1983 and the court has jurisdiction under 28 U.S.C. §§1331 and 1343. Dkt. Nos. 7, 43. Venue lies in this district. Id.

The plaintiff resides in Wisconsin. Dkt No. 5. At the time of the events described in the amended complaint, defendants Bennett Thill, Gary Neubauer, Cody Dummer, Natalie Longrie, Allen Wassil, LaVontay Fenderson, Felicia Frieri-Gaines, Lennot Webb and Adam Amundsen were employed as Racine Police Officers. Dkt. Nos. 99 at ¶1; 100 at ¶19; 100-1; 102 at ¶1; 101 at ¶1; 102 at ¶1; 103 at ¶1; 104 at ¶1.

The amended complaint alleges that on March 28, 2018, the plaintiff noticed that he was being followed "by unmarked cars" after leaving a class in Racine, Wisconsin to return "to HALO (a shelter)." Dkt. No. 5 at 3. The plaintiff states that "[a]fter discovering that [he'd] lost the means to return to Milwaukee," he began to panic "in order to" find his belongings, particularly the school laptop given to him by Asia Barry. Id. at 3-4. The plaintiff says that because he was still being followed and harassed during the "panicked search," he asked security at S.C. Johnson Wax Headquarters to call the police to help him search for his belongings. Id. at 4.

The plaintiff says that "[d]uring the initial questioning," he noticed that defendant "Fenderson was upset, almost to the point of tears, when he notified a '51st squad' that he" had found the plaintiff. Id. The plaintiff says that defendant Amundsen offered to drop the plaintiff off at HALO and the plaintiff

5

accepted on the condition that he ride with Fenderson. Id. The plaintiff says that during the ride, he noticed that Fenderson was "still corresponding with a '51st squad'" until Fenderson asked why the plaintiff was in Racine; the plaintiff responded he was "ultimately" there for the "finest woman in Racine." Id. at 4-5. At HALO, the plaintiff searched for, but did not locate, his belongings. Id. at 5. He says that afterward, he "felt [he] absolutely had to leave because [he] couldn't find the armed security of HALO," and he went searching for them. Id. He thought they were outside, until someone shined a spotlight in the plaintiff's face and yelled at him in the rain. Id.

The plaintiff attached seventy-nine pages of exhibits to the amended complaint and included the Racine Police Department Supplementary Report and Use of Force Report, which identify the date of the incident as March 29, 2018. Dkt. No. 5-1 at 8; 5-1 at 11. On March 29, 2018, at approximately 5:02 a.m., Officer Amundsen was dispatched to the Homeless Assistance Leadership Organization (HALO) at 2000 De Koven Ave, on a report that a man had stolen a cell phone and shoes. Dkt. No. 100 at ¶3. The complainant, Richelle Raun, identified the plaintiff. Id. at ¶4. Dispatch advised that the plaintiff was walking toward the intersection of De Koven Ave and S. Memorial Drive wearing a grey hoody, blue shoes and blue jeans. Id. While Amundsen was enroute to the area of the call, he observed the plaintiff, whom he recognized from previous contact, walking in the 1400 block of De Koven Avenue. Id. at ¶6. He remembered the plaintiff from a call earlier that day, in which the plaintiff had falsely claimed that he was "mugged." Id. at ¶5.

6

From inside his squad car, Amundsen ordered the plaintiff to stop. Id. at ¶6. The plaintiff walked toward Amundsen's squad car, ignored his lawful commands, then continued to walk eastbound on De Koven Ave. Id. Amundsen got out of his squad car and again ordered the plaintiff to "stop." Id. at ¶7. Amundsen told the plaintiff that he was going to be detained in reference to the theft incident that had occurred at HALO. Id. The plaintiff ignored Amundsen's commands and raised his hands above his head without being prompted. Id. at ¶8. The plaintiff began looking over his shoulder as if he were planning to run away. Id. Based on his experience and training, it appeared to Amundsen that the plaintiff might be under the influence of an unknown substance or suffering from some sort of mental health condition. Amundsen knew that individuals who may be under the influence or suffering from mental health crisis could present a heightened risk to officers. Id. at ¶9.

At the time of the encounter, the plaintiff was 6'2" and weighed 242 pounds. Dkt. No. 100-1 at 4. Due to the plaintiff's size, odd behavior and resistive actions, Amundsen asked that his cover officers step up their response time. Dkt. No. 100 at ¶10; Dkt. No. 100-1 at 5-6. Amundsen then advised the plaintiff that he was going to place him in handcuffs and ordered him to turn around. Dkt. No. 100 at ¶10. In response to Amundsen's command, the plaintiff made random incoherent statements to Amundsen. Id. To safely initiate physical contact with the plaintiff, Amundsen attempted to place the plaintiff in an escort hold. Id. at ¶11. As soon as he made contact with the plaintiff's right arm, the plaintiff flexed his bicep and forearm muscles.

7

Id. The plaintiff then pulled his arm from Amundsen's grasp and moved away from him, while looking over his shoulder and proceeding to move at a quicker pace away from Amundsen. Id. at ¶¶11, 12. Amundsen again tried to place the plaintiff in an escort hold. The plaintiff pulled away from Amundsen's grasp; Amundsen fell onto the sidewalk. Id. at ¶12.

After Amundsen fell to the ground, he stood up and ordered the plaintiff to "stop." Id. at ¶13. The plaintiff ignored Amundsen's command and continued to walk away from Amundsen; Amundsen pursued the plaintiff eastbound on De Koven Avenue toward the nearby railroad tracks. Id. While Amundsen was pursuing the plaintiff, he saw the plaintiff reach into his pocket and throw an object "that appeared to have a shine" into the grassy area on the North side of the 1400 block of De Koven Avenue. Id. at ¶14; Dkt. No. 100-1 at 6. Amundsen later located the object—a glass pipe commonly used to smoke marijuana. Dkt. No. 100 at 29; Dkt. No. 100-1 at 7.

Officer Fenderson arrived on the scene. Dkt. No. 99 at ¶4. Fenderson and Amundsen ordered the plaintiff to "stop." Id. The plaintiff ignored Fenderson and Amundsen, did not stop and continued walking away from the officers. Dkt. No. 99 at ¶¶4, 5; Dkt. No. 100 at ¶15. Due to the plaintiff's continued active resistance, Fenderson and Amundsen determined that the plaintiff needed to be decentralized. Dkt. No. 99 at ¶6; Dkt. No. 100 at ¶16. When Amundsen and Fenderson caught up to the plaintiff and attempted to place him in an escort hold so that they could safely decentralize him onto the sidewalk, the plaintiff showed extreme strength and pulled away from both of

8

them. Id. Because of the plaintiff's strength, Amundsen decided to trip him in order to decentralize him; the plaintiff fell to the sidewalk, with Amundsen and Fenderson on top of him. Dkt. No. 100 at ¶16.

Amundsen and Fenderson attempted to hold the plaintiff on the ground. Dkt. No. 99 at ¶7; Dkt. No. 100 at ¶17. The plaintiff pushed up off the sidewalk and stood up. Id. After the plaintiff stood up, he proceeded eastbound away from the officers. Dkt. No. 99 at ¶8; Dkt. No. 100 at ¶18. As the plaintiff fled, officers ordered him to "stop." Id.

More Racine police officers arrived at the scene to assist in detaining the plaintiff, including Officers Dummer, Longrie, Frieri-Gaines, Wassil, Neubauer and Thill. Dkt. No. 99 at ¶9; Dkt. No. 100 at ¶19; Dkt. No. 101 at ¶5; Dkt. No. 102 at ¶4; Dkt. No. 103 at ¶4. Dummer ran after the plaintiff and, to take control of the situation that was rapidly escalating and becoming unsafe for all involved, pushed the plaintiff against a nearby chain link fence. Dkt. No. 103 at ¶¶6, 8. Dummer attempted to control the plaintiff's fall and landed on top of the plaintiff. Id. at ¶8. Dummer gave the plaintiff multiple commands to place his hands behind his back but the plaintiff actively resisted. Id. at ¶9. Amundsen, Fenderson, Longrie, Frieri-Gaines, Wassil and Thill attempted to place the plaintiff in handcuffs but the plaintiff thrashed around and attempted to throw Dummer off of him. Id. ¶10; Dkt. No. 99 at ¶10. Attempts to control the plaintiff failed due to the plaintiff's "abnormal amount of strength." Dkt. No. 100 at ¶20; Dkt. No. 99 at ¶11; Dkt. No. 101 at ¶7; Dkt. No. 102 at ¶6.

9

It appeared to Dummer, Amundsen, Thill and Frieri-Gaines that the plaintiff was under the influence of an unknown substance based on the superhuman strength he exhibited. Dkt. No. 103 at ¶27; Dkt. No. 100 at ¶9; Dkt. No. 102 at ¶6; Dkt. No. 101 at ¶7. Officers gave him multiple "stop resisting" and "give us your hands" commands. Dkt. No. 101 at ¶5; Dkt. No. 100 at ¶21; Dkt. No. 99 at ¶12; Dkt. No. 102 at ¶8. The plaintiff ignored those commands and actively resisted the officers. Dkt. No. 101 at ¶6; Dkt. No. 100 at ¶21; Dkt. No. 99 at ¶12; Dkt. No. 102 at ¶8.

While the officers struggled to place the plaintiff in handcuffs, Dummer executed multiple hand strikes to the plaintiff, trying create dysfunction as the plaintiff continued to actively resist. Dkt. No. 103 at ¶11. Dummer also attempted to place the plaintiff in an escort hold. Id. at ¶9. The hand strikes and compliance hold were not effective in apprehending the plaintiff. Id. at ¶11. Dummer, Amundsen, Fenderson, Longrie, Frieri Gaines, Wassil and Thill disengaged the plaintiff and Dummer deployed his Taser. Dkt. No. 98 at ¶57; Dkt. No. 103 at 12. Dummer's Taser deployment was ineffective. Id.; Dkt. No. 103 at ¶13. Because they were struggling to take the plaintiff into custody, Thill then deployed his Taser. Dkt. No. 102 at ¶9. Thill's taser prongs made contact with the plaintiff's abdomen. Id. The prongs had little to no effect on the plaintiff and he attempted to pull them from his body. Dkt. No. 100 at ¶24; Dkt. No. 102 at ¶10. Normally when a subject is tased, the pulse causes the muscles to become uncoordinated and the muscles contract at random. Dkt. No. 103 at ¶14.

The officers reengaged the plaintiff on the ground and continued to try to detain him in handcuffs. Dkt. No. 99 at ¶13; Dkt. No. 103 at ¶19. Dummer continued to deliver knee strikes to the plaintiff's right abdomen area. Dkt. No. 103 at ¶17. While Dummer was trying to assist Fenderson in applying handcuffs on the plaintiff's right wrist, the plaintiff tried to bite Dummer. Dkt. No. 103 at ¶20; Dkt. No. 101 at ¶10. Fenderson attempted to handcuff the plaintiff in front and placed one cuff on the plaintiff's left wrist; in the process, the plaintiff grabbed the cuff and bit Fenderson's right index and ring finger. Dkt. No. 99 at ¶13. Fenderson yelled to the other officers that the plaintiff was biting his hand. Dkt. No. 99 at ¶14; Dkt. No. 100 at ¶25; Dkt. No. 102 at ¶6; Dkt. No. 101 at ¶10. Dummer delivered several "reactionary hand strikes" to the plaintiff's face to stop him from biting Fenderson. Dkt. No. 103 at ¶20. The plaintiff eventually released Fenderson's fingers from his mouth. Dkt. No. 103 at ¶20. Soon thereafter, Wassil and Fenderson finally were able to put handcuffs on the plaintiff. Dkt. No. 103 at ¶22; Dkt. No. 99 at ¶15. The officers had to handcuff the plaintiff in front of his body because they were unable to place him into handcuffs behind his back. Dkt. No. 101 at ¶11; Dkt. No. 102 at ¶11; Dkt. No. 100 at ¶26; Dkt. No. 103 at ¶22. The officers continued to try to secure the plaintiff for his safety as he was still attempting to break free of the restraints and stand up. Dkt. No. 103 at ¶23; Dkt. No. 100 at ¶26.

During the entire encounter the plaintiff would yell "you are going to have to kill me." Dkt. No. 101 at ¶8; Dkt. No. 100 at ¶27; Dkt. No. 103 at ¶18. The plaintiff also sang the lyrics to rap songs and made random statements to

11

the officers throughout the encounter. Dkt. No. 100 at ¶27; Dkt. No. 101 at ¶12. It took eight officers to place the plaintiff in handcuffs. Dkt. No. 100 at ¶20. The responding officers had to continue to hold the plaintiff down until Racine Fire Department Rescue arrived. Dkt. No. 102 at ¶12; Dkt. No. 103 at 23. The Racine Fire Department personnel sedated the plaintiff to calm him down and placed him onto a gurney. Dkt. No. 103 at ¶24; Dkt. No. 100 at ¶28; Dkt. No. 102 at ¶12; Dkt. No. 101 at ¶13. The Racine Fire Department then transported the plaintiff to the emergency room at St. Mary's Medical Center for medical evaluation and medical release for the Racine County Jail. Dkt. No. 103 at ¶24; Dkt. No. 100 at ¶28; Dkt. No. 101 at ¶14. Longrie, Dummer, Amundsen and Wassil all responded to the hospital to guard the plaintiff due to his erratic and violent behavior. Dkt. No. 103 at ¶25. The plaintiff was handcuffed to the hospital bed to ensure the safety of hospital staff. Id. The plaintiff was incoherent and combative during the first few hours of his hospital stay. Id. He was uncooperative with hospital staff and shouted and chanted unintelligible phrases and songs. Id. After approximately four hours at the hospital, he became more and more coherent. Id. at ¶26. Eventually the plaintiff was medically cleared and transported to the Racine County Jail without further incident. Id.

Sergeant Webb arrived on the scene of the arrest after the plaintiff had been detained and placed into custody; Webb had no personal contact with the plaintiff. Dkt. No. 104 at ¶¶ 3-4. The responding officers notified Webb of the incident and of their injuries. Dkt. No. 103 at ¶28; Dkt. No. 99 at ¶¶16-17.

12

Neubauer took photographs of Dummer's injuries and of the pipe the plaintiff had thrown in the grass north of the sidewalk in the 1400 block of Dekoven Ave. Dkt. No. 103 at ¶29; Dkt. No. 100 at ¶29.

The plaintiff alleges in the amended complaint that "[d]uring that time (which it was identified as [his] altercation with police of Racine) [he] felt; stings, someone forcing [his] head down from [his] neck, another pulling [his] pants down, ears ringing and [his] jaw not being able to close before [he] blacked out completely." Dkt. No. 5 at 5. He believes he was handcuffed more than one time because he could not defend himself against blows to his face or the hand pressing on the side of his neck. Id. The plaintiff has no recollection of being sedated or his time at the hospital. Id. at 5-6. He recalls only "a clapping when [he] woke up at a room with armed uniformed men asking [him] questions while feeling groggy." Id. at 6.

The plaintiff asserts that the Racine Police officers he named and sued were "based of those mentioned of the alleged battery to a officer;" he says he was not able to identify the officers who prevented him from going to court on April 2, 2018. Id.

The plaintiff was charged with one felony count of resisting or obstructing—causing injury, in violation of Wis. Stat. §946.41(2r); one felony count of battery to a law enforcement officer, in violation of Wis. Stat. §942.20(2); one misdemeanor count of disorderly conduct, in violation of Wis. Stat. §947.01; and one misdemeanor count of possession of drug

13

paraphernalia, in violation of Wis. Stat. §961.573(1). Dkt. No. 100 at ¶35; Dkt. No. 100-1 at 2.

C.    Analysis

The amended complaint states that the plaintiff was suing "within the definition of Bivens or U.S.C. § 1983 of Title 42." Dkt. No. 5 at 2. Section 1983 of Title 42 allows a plaintiff to sue a "person" who violates his constitutional rights "under color of" state law. The statute "creates a federal cause of action for 'the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir.1997) (quoting Livadas v. Bradshaw, 512 U.S. 107, 132 (1994)). In §1983 cases, "the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

1.    *Sergeant Webb*

To establish personal liability under §1983, "the plaintiff must show that the relevant official 'caused the constitutional deprivation at issue' or 'acquiesced in some demonstrable way in the alleged constitutional violation.'" Gonzalez v. McHenry C'nty, Ill., 40 F.4th 824, 828 (7th Cir. 2022) (quoting Palmer v. Marion C'nty, 327 F.3d 588, 594 (7th Cir. 2003)). "'Lawsuits against individuals require personal involvement in the constitutional deprivation to support a viable claim.'" Id.

14

The plaintiff's "objection to summary judgment" does not discuss Webb's involvement in the events of March 29, 2018. He says only that the "defendants are lying." Dkt. No. 106. That means it is undisputed that Webb arrived on the scene after the defendant had been taken into custody and had no personal contact with the plaintiff. Dkt. No. 104 at ¶4. Because Webb was not personally involved in the events the plaintiff described in the amended complaint, the court must dismiss Webb as a defendant.

### 2. *Fourth Amendment claim*

In its order screening the amended complaint, the court concluded that "construing the allegations in the complaint and the attachments very liberally, the plaintiff has stated excessive force/false arrest claims" against the defendants. Dkt. No. 43 at 10.

The court analyzes an arrestee's claim for excessive force under the Fourth Amendment's objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 388 (1989). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." Gupta v. Melloh, 19 F.4th 990, 996 (7th Cir. 2021) (quoting Phillips v. Cmty. Ins. Corp., 678 F.3d 513, 519 (7th Cir. 2012)). The court evaluates whether the officer's actions were objectively reasonable" from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Bell v. Wolfish, 441

15

U.S. 520, 559 (1979). "[I]ts proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

The Supreme Court has "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. The question is whether the force used is reasonable. Id. The Seventh Circuit has held that "increased force may be reasonable when used in response to an arrestee's active struggling and in proportion to the threat presented." Phillips, 678 F.3d at 527. That court concluded that officers' use of batons, knee strikes and OC spray was reasonable given their belief that the plaintiff was intoxicated and the level of his physical resistance. Padula v. Leimbach, 656 F.3d 595, 603 (7th Cir. 2011).

The plaintiff has presented no facts regarding his actions during the arrest. The amended complaint talks about the plaintiff having been at HALO the day before, the officers' arrival and the injuries that the plaintiff says resulted from the altercation. But the plaintiff admitted in the amended complaint that he had no recollection of what happened between the time he says he came out of HALO and the time he woke up in the hospital. The plaintiff's own attachments to the amended complaint and the defendants' facts describe a situation in which the plaintiff actively resisted arrest, evaded eight officers, bit one officer and injured another and required sedation to stop

16

him from being combative. Even then, he remained combative for another several hours in the hospital. In response to this evidence, the plaintiff makes the bald, unsupported assertion that the defendants are lying.

Amundsen responded to a report that the plaintiff had stolen a cell phone and shoes. Amundsen was familiar with the plaintiff from an earlier call and spotted him on the street. Dkt. No. 100-1 at 1, 5. Amundsen also was aware—from the earlier call—that the plaintiff had a mental health condition or was under the influence of an unknown substance. Id. at 5. The plaintiff ignored multiple orders to stop and Amundsen requested backup as the plaintiff began making random statements and speaking incoherently. Id. at 5-6. The plaintiff resisted Amundsen's attempt to place him an escort hold. Id. at 6. During Amundsen's second attempt, the plaintiff pulled away and Amundsen fell to the sidewalk. Id. The plaintiff again ignored orders to stop and Amundsen followed the plaintiff until Fenderson arrived. Id. As the plaintiff pulled away, Amundsen tripped him causing him to fall. Id. The plaintiff pushed up off the sidewalk while officers tried to hold him down. Id. He escaped again and started to run eastbound. Id. He continued to ignore orders to stop. Id.

At this point, the situation escalated. Officers pursued the plaintiff and Dummer fell onto the plaintiff after pushing him into the fence. Id. Even then, eight officers could not get the plaintiffs into handcuffs because of the "abnormal amount of strength that [the plaintiff] was displaying." Id. All the evidence in the record confirms that the plaintiff actively resisted, ignored

17

officers' commands and made it impossible to get him in handcuffs. "All trained techniques executed to create dysfunction were unsuccessful and ineffective in controlling [the plaintiff's] active resistance." Dkt. No. 103 at ¶27. After being tasered, the plaintiff pushed up off the ground and yelled "you are going to have to kill me" as he continued to resist arrest. Id. at ¶¶16, 18. The plaintiff bit Fenderson, and only released Fenderson's fingers after Dummer delivered reactionary hand strikes. Id. at ¶21. He remained combative during the first few hours of his hospital stay (even after sedation). Id. at ¶25.

A reasonable officer in the defendants' position would have concluded that the escalation of force was necessary to restrain the plaintiff. On this record, the escalated use of force was necessary to detain the plaintiff. The plaintiff has presented no evidence giving rise to a genuine dispute of material fact regarding whether a reasonable officer in the defendants' position would have found the escalation of force necessary. The defendants are entitled to judgment as a matter of law on the plaintiff's excessive force claim.

### 3. *False arrest claim*

The court also concluded at screening that the plaintiff had asserted false arrest claims against the defendants. Dkt. No. 43 at 10. The defendants did not present arguments regarding a false arrest claim. But the evidence demonstrates that the plaintiff cannot prevail on a false arrest claim. "[A]rrests are 'seizures' of 'persons,' [so] they must be reasonable under the circumstances." District of Columbia v. Wesby, ___ U.S. ___, 138 S. Ct. 577, 585 (2018). "A warrantless arrest is reasonable if the officer has probable cause

18

to believe that the suspect committed a crime in the officer's presence." Id. at 586 (citing Atwater v. Lago Vista, 532 U.S. 318, 354 (2001)). There is no genuine issue of material fact that the officers had probable cause to arrest the plaintiff; he resisted arrest, committed battery to at least one (and likely more) officers and committed disorderly conduct. Because the officers had probable cause to arrest the plaintiff, he cannot prevail on a false arrest claim.

### 4. *Qualified Immunity*

The defendants also argue that they are entitled to qualified immunity. Dkt. No. 97 at 11-12. Whether an officer is entitled to qualified immunity "involves a two-pronged inquiry: (1) whether the facts, read in favor of the of the non-moving party, amount to a constitutional violation; and (2) whether the constitutional right was clearly established at the time of the alleged violation." Rainsberger v. Benner, 913 F.3d 640, 647 (7th Cir. 2019). Put another way, "officers are entitled to qualified immunity . . . unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" Wesby, 138 S. Ct. at 589 (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012).

The court has found that the defendants did not violate the plaintiff's statutory or constitutional rights. There is no need for the court to determine whether the defendants would have been entitled to qualified immunity if they had violated the plaintiff's constitutional rights, because they did not do so.

19

## II.     Plaintiff's Dispositive Motion (Dkt. No. 105)

On May 31, 2022, the plaintiff filed a document titled "Dispositive motion & request to proceed under oath." Dkt. No. 105. The plaintiff wrote: "Due to the defendants' noncompliance to the scheduling order, I request that they proceed under oath with penalty of perjury. I attempted a 'good faith & confer' to no response as well. Attached is the email correspondence." Dkt. No. 105. The plaintiff attached a May 26, 2022 email that he sent to defense counsel stating "I haven't heard anything from the defendants of the order by the Chief Magistrate for a joint deposition." Dkt. No. 105-1 at 1-2. Defense counsel responded the same day, explaining to the plaintiff that counsel had not received an order from the court requiring defendants to appear for a deposition. Dkt. No. 105-1 at 1. Counsel indicated that the deadline for discovery had closed on March 25, 2022. Id.

The court will deny the plaintiff's motion for several reasons. First, the document is not a "dispositive motion." "A dispositive motion is a motion asking for a court order that entirely disposes of one or more claims in favor of the moving party without need for further court proceedings." https://definitions.uslegal.com/d/dispositive-motion/. The plaintiff's filing does not ask the court to resolve the plaintiff's claims. It asks the court to require the defendants to proceed under oath, although the plaintiff does not provide a rule or other authority supporting that request. Second, to the extent that the plaintiff is accusing the defendants of failing to comply with the scheduling order, it has no merit. The court issued the scheduling order on September 14,

20

2021. Dkt. No. 67. It required the parties to complete discovery by March 25, 2022 and to file dispositive motions by May 27, 2022. Id. The defendants filed their motion for summary judgment on the May 27, 2022 deadline. The plaintiff has provided no evidence that the defendants did not comply with the discovery deadline or other deadlines in the September 14, 2021 scheduling order. Finally, if a party makes a good-faith attempt to resolve discovery disputes and is unsuccessful, the remedy is to file a motion to compel under Fed. R. Civ. P. 37 and Civil L.R. 37 *before* the deadline for completing discovery. The plaintiff filed this document on May 31, 2022, over two months *after* the deadline for completing discovery. The court will deny the motion.

### III. Plaintiff's Right to Trial Hearing Request (Dkt. No. 109)
Plaintiff's Motion for Trial as Scheduled (Dkt. No. 114)
Plaintiff's Notice of Detainment (Dkt. No. 117)

On June 13, 2022, the court received from the plaintiff a document titled "Right to trial hearing request." Dkt. No. 109. The document stated:

> Due to the interruption possibly by the defendants and switch of representation without notice,[1] I would like the court to swear in the defendants as their reports of the felony criminal case and deposition differs from they bodycam'/dashcam footage supported by medical records that includes usage of ketamine[.]

Id. The plaintiff attached to this document a letter from the University of Wisconsin Milwaukee's University Housing Department dated June 7, 2022, terminating the plaintiff's "Individual Housing Facility Use Agreement as an

---

[1] There has been no "switch of representation" by the defendants. Since their first appearance in the case, the defendants have been represented by Attorney Kyle Moore. Attorney Moore was with Gunta Law Offices at the beginning of the case, and now is with Wirth and Moore, but he remains defense counsel (as does Attorney Ann Wirth).

21

intern" because they were unable to verify that he had a legitimate internship with "Studio Troupe." Dkt. No. 109-1 at 1. The plaintiff also attached a copy of his driver's license. Id. at 2.

On July 5, 2022, the court received from the plaintiff a document titled "motion for trial." Dkt. No. 114. This document stated, "I don't see my case on the calender of the computer at the federal courthouse, nor any hearings. No service nor notice of change of representation for suit from defendants. Demand for trial, @ 7/14/22." Id. The plaintiff attached a letter from the Social Security Administration indicating that he had applied for a Social Security card on June 14, 2022 and that it should be arriving in about two weeks. Dkt. No. 114-1. Handwritten at the bottom of this letter was a notation, "Unable to receieve mail as forwarded to church. Given fake money and have felony case 22cf5239[2] at date of trial." Id. The plaintiff also attached photocopies of the front and back of a $100 bill. Dkt. No. 114-2.

On July 19, 2022, the court received from the plaintiff a document titled "Notice of detainment." Dkt. No. 117. This document stated:

> Per to rule 38 (local rules),[3] I would like to demand a jury trial and to be there for it, as supported by the 7th amendment of the constitution. In additionally supported by rule 11th, the association of the defence is hindering my consititutional right to trial and acting under color of law from a probation hold warrent arrest on 7/8/22 to be charged with 22cf2539 (incident date 11/7/20). As I signed

[2] The public docket identifies this as State v. Troupe, 2022CF002539 (Milwaukee County Circuit Court), a criminal case charging the plaintiff with burglary to a room within a building in violation of Wis. Stat. §943.10(1m)(f). https://wcca.wicourts.gov. The complaint was filed on June 27, 2022 and a jury trial is scheduled for January 3, 2023. Id.

[3] This court's local rules have no rule numbered 38.

> TLP papers with Higgins as a employee of the city of Milwaukee and
> department of corrections to be arrested by West Allis Police after
> grabbing a parking permit for my Silvercrest. For this hindered me
> from trial as scheduled and of my education. Please foword to 7th
> circuit U.S. Court of Appeals, as I'm not able to recieve my SSN card
> nor any postage.

Id.

The plaintiff is not entitled to a hearing or a trial. The court has

concluded that there is no genuine dispute as to an issue of material fact and

that the law requires judgment in favor of the defendants. None of the

documents the plaintiff attached to his motions support his demand for a trial;

they do not appear to relate to this case at all. The court will deny the requests.

## IV. Plaintiff's Motion for *Habeas Corpus*/Trust Account Entry Statement (Dkt. No. 120)

On August 10, 2022, the court received from the plaintiff a document

titled "motion for *habeas corpus*/trust account entry statement in case nos. 19-

cv-1318, 21-cv-1176, and 22-cv-853." Dkt. No. 120. The motion says that the

plaintiff needs the protection of *habeas corpus* to prevent PO holds by

"defendant Dorian A. Higgins[4] over judges' and Magistrates' summons and

orders." Id. The plaintiff says that "this" prevents him from "the orders made by

District 7 United States Court of Appeals in Chicago." Id. He says that someone

named Officer Johnston told him that he had to be in custody "for the

unavailable form." Id. He indicates that he is attaching the city attorney's

request for impartial findings of fact, citing a Wisconsin statute, and mentions

warrants and probation holds to "halt judges'/Magistrates' scheduling of

---

[4] There is no defendant named Dorian A. Higgins in this case.

23

criminal and civil cases;" he says he needs access to PACER at the federal courthouse. Id. The plaintiff attached a February 15, 2022 letter addressed to him from the Office of the City Attorney in Racine, Wisconsin, in which the City Attorney said that he had no body camera footage for incident numbers 18-12668, 18-12693 and 18-12690. Dkt. No. 120-1.

The plaintiff likely intended to file this motion in Case No. 22-cv-853 in response to the deputy clerk's request for a certified copy of his institutional trust account statement. Case No. 22-cv-853, Dkt. Nos. 3, 6. The court denied the motion in that case because the plaintiff had not demonstrated that the Milwaukee County Jail had refused to provide the plaintiff with a trust account statement and because it was his responsibility to either provide the court with his trust account statement or provide proof that he was unable to do so. Case No. 22-cv-853, Dkt. No. 13 at 2. Because the motion has nothing to do with this case, the court will deny it.

**V.    Plaintiff's Request to Amend Scheduling Order to Include Jury Selection & Trial Date (Dkt. No. 122)**

On August 24, 2022, the court received from the plaintiff a document titled "Request to amend scheduling order to include jury selection & trial date." Dkt. No. 122. The only portion of this document that appears to relate to scheduling is his statement that he "would need the court to set from indefinate to consitutionally sound time as I face more time due to my faith in GOD and stance of human rights against those acting in the color of law." Id. Otherwise, the document discusses conversion of docket entries, the plaintiff

24

not having his wallet, the cost of commissary items and the fact that Aramark will not provide the plaintiff a statement. Id.

All the deadlines the court set in the September 2021 scheduling order have passed, so if the plaintiff is seeking extension of those deadlines, he made his request too late. If he is asking the court to schedule a trial date, the court already has indicated that the plaintiff is not entitled to a trial because there are no genuine disputes as to issues of material fact and the defendants are entitled to judgment as a matter of law. The court will deny the motion.

## VI. Plaintiff's Motion of Consolidation (Per to Civil Local Rules #42) of Cases 19cv1318/21cv1176/22cv853 (Dkt. No. 124)

On September 14, 2022, the court received from the plaintiff a document titled "Motion of consolidation (Per to civil local rules #42) of cases 19cv1318/21cv1176/22cv853." Dkt. No. 124. This motion states:

> With yet another stolen wallet by those acting under the color of law and organized by the defendants in order to hinder my consititutional rights/ability to appear at court, I require to use exhibits of the lowest case number for more civil rights infringement thats currently resulted in my enslavement by those that deny GOD and Jesus Christ as our Lord/Savior. As I maintain my please of 'not guilty' of misdemeanors, the force revocation/holds over my felony bond will result into violation of parole from forced probation to move me to Racine County Jail instead of giving me the chance to beat 22cf2139 fairly, and speedy as pro se as protected (assumed) by the US Constitution. My accuser of the revocation is preventing me from linking Milwaukee Office of Violence Prevention laundering to "black isrealites" via "baba" of #414life as shown and recorded by my social media to be published by conservative media like Fox 6, Africa American Round Table, etc. Please enter all exhibits and send docket summarys. Almost killed by defendants on 8/5/22 via auto accident. One nation under GOD.

Id.

The plaintiff attached to this document a notice from the State of
Wisconsin Division of Hearings and Appeals of a revocation hearing scheduled
for October 4, 2022, dkt. no. 124-1 at 2, a revocation hearing request, dkt. no.
124-1 at 3, an inmate property receipt, dkt. no. 124-1 at 4, and a waiver of
final revocation hearing, dkt. no. 124-1 at 5-6.

The court has dismissed Case Nos. 21-cv-1176 and 22-cv-853 and is
dismissing this case. There are no longer any cases for the court to consolidate.
The state revocation hearing is not related to this case. The court will deny the
motion as moot.

**VI.    Plaintiff's Request for Federal Intervention (Dkt. No. 127)**

On October 11, 2022, the court received from the plaintiff a "request for
federal intervention" in Case Nos. 19-cv-1318, 21-cv-1176, and 22-cv-853. Dkt.
No. 127. The plaintiff writes:

> Included are infomation of the unlisted revocation/sentencing case
> #090522-557258 to prevent me from proceeding effectively nor
> working/schooling via gaslighting and threats made of killing my
> mother with gang raping of Aisa Barry by those acting under the
> color of law as currently enslaved by the defendants of these suits.
> Please conduct or close these suit for I can proceed with action as
> pledged, 'to the republic from which it stands, one nation under
> GOD'[.]

Id. The plaintiff attached to this document a blank waiver form from the
Milwaukee County Sheriff's Department for a person to sign if he wants
to waive Huber/GPS privileges and remain in the 3D Occupant Worker
Program at the Milwaukee County Jail to work time off his sentence,
along with a Wisconsin Department of Corrections custody credit form.
Dkt. No. 127-1.

Although it is not clear, it appears that the plaintiff is asking this federal court to intervene in a state criminal matter. (He may have been making that request in some of his earlier filings as well.) The court cannot grant that request. "[Younger v. Harris, 401 U.S. 37 (1971)] generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims hat involve or call into question ongoing state proceedings." FreeEats.com, Inc. v. Indiana, 502 F.3d 590, 595 (7th Cir. 2007). "'The rule in *Younger v. Harris* is designed to permit state courts to try state cases free from interference by federal courts.'" Id. (quoting Forty One News, Inc. v. Cty. of Lake, 491 F.3d 662, 665 (7th Cir. 2007)). This federal court cannot interfere with the ongoing revocation proceedings in state court. The court will deny the motion.

## VII.  Conclusion

The court **GRANTS** defendants' motion for summary judgment. Dkt. No. 96.

The court **DENIES** the plaintiff's dispositive motion. Dkt. No. 105.

The court **DENIES** the plaintiff's right to trial hearing request. Dkt. No. 109.

The court **DENIES** the plaintiff's motion for trial as scheduled. Dkt. No. 114.

The court **DENIES** the plaintiff's notice of detainment. Dkt. No. 117.

The court **DENIES** the plaintiff's motion for *habeas corpus*/trust account entry statement. Dkt. No. 120.

The court **DENIES** the plaintiff's request to amend scheduling order to include jury selection & trial date. Dkt. No. 122.

The court **DENIES AS MOOT** the plaintiff's motion of consolidation (per to civil local rules #42) of cases 19cv1318/21cv1176/22cv853. Dkt. No. 124.

The court **DENIES** the plaintiff's request for federal intervention. Dkt. No. 127.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 18th day of November, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**